UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEGAN KLINE,<br><br>Plaintiff,<br><br>v.<br><br>RON NEAL, DAWN BUSS, SCHNIEDER,<br><br>Defendants. | CAUSE NO. 3:25-CV-563-JD-SJF |

OPINION AND ORDER

Kegan Kline, a prisoner without a lawyer, filed a complaint alleging that prison officials failed to protect him from an attack by other inmates. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Kline alleges that he arrived at Indiana State Prison on January 3, 2024, and requested protective custody on January 5, 2024, and January 8, 2024. ECF 1 at 2. He talked to defendant Schnieder, his case worker, about protective custody on January 10, 2024, and Schnieder told Kline that he would talk to the warden and internal affairs. *Id.*

Kline was denied protective custody on January 17, 2024. *Id.* The same day, Kline's mom spoke to defendant Dawn Buss, the assistant warden, about why Kline was denied protective custody. *Id.* Kline filed grievances seeking protective custody on January 18, 2024, and January 24, 2024. *Id.* He was sent to general population in Cell House A on February 12, 2024, and transferred out of Cell House A on February 16, 2024, based on a threat. *Id.* at 3. He filed another protective custody grievance the same day. *Id.*

On February 20, 2024, a documentary in which Kline was featured was released and five gang members approached Kline and told him to leave or they would kill him. *Id.* at 3. Kline told a correctional officer that he needed to speak with a major, and the officer told Kline that he would contact a major. *Id.* Kline told the officer about the threat, and the officer told him to sit down. *Id.* A few minutes later, Kline was attacked and beaten. *Id.*

Kline alleges that defendants Buss, Schnieder, and Warden Ron Neal are liable for failing to protect him. Kline claims that Neal told Schnieder that Neal knew there was a considerable threat to Kline's safety, but placed Kline in general population anyway. *Id.* at 2. Kline alleges that Schnieder denied him protective custody even though Schnieder told Kline that he would probably be hurt in a general population placement. *Id.* Kline alleges that Buss denied him protective custody even after speaking with his mom about his need for protective custody. *Id.*

The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832

(1994) (cleaned up). "[A] prison official is liable for failing to protect an inmate from another prisoner only if the official knows of and disregards an excessive risk to inmate health or safety." *Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023) (cleaned up). "[A] prisoner normally proves actual knowledge of impending harm by showing that he complained to prison officials about a specific threat to his safety." *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (cleaned up).

Kline has stated an Eighth Amendment claim for failure to protect. Giving Kline the benefit of all reasonable inferences, it is plausible that Kline's repeated requests for protective custody were based on the imminent release of the documentary and the threat posed to Kline once the documentary was aired. It is reasonable to infer that he shared this information with the defendants in his requests for protective custody. Kline has plausibly alleged that defendants disregarded a specific, imminent threat to his safety by declining his requests for protective custody.

For these reasons, the court:

(1) GRANTS Kegan Kline leave to proceed against Warden Ron Neal, Assistant Warden Dawn Buss, and Case Worker Schnieder in their individual capacities for compensatory and punitive damages for failing to protect him from the February 20, 2024, attack by other inmates, in violation of the Eighth Amendment;

(2) DISMISSES all other claims;

(3) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Ron Neal, Assistant Warden Dawn Buss, and Case

Worker Schnieder at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(4) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(5) ORDERS, under 42 U.S.C. § 1997e(g)(2), Warden Ron Neal, Assistant Warden Dawn Buss, and Case Worker Schnieder to respond, as provided for in the Federal Rules of Civil Procedure and Northern District of Indiana Local Rule 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on November 18, 2026

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT